UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CHABAD OF KEY BISCAYNE, INC.,          CASE NO. 1:21-CV-24043-DPG

    Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
_____/

## SIC'S MOTION FOR SUMMARY FINAL JUDGMENT

The Defendant, Scottsdale Insurance Company ("SIC"), pursuant to Fed. R. Civ. P. 56, moves for summary final judgment against the Plaintiff, Chabad of Key Biscayne, Inc. ("Chabad"), and states:

### I. INTRODUCTION

SIC insures Chabad. Chabad suffered damage caused by water discharging from a failed sewer or drain. Chabad sought coverage for the ensuing water damage. An appraisal set the amount of this damage. SIC paid its policy limit afforded under the policy's "Water or Backup or Overflow of Sewers and Drains" coverage extension. Chabad argues that the coverage extension is superfluous and its limit inapplicable because the policy does not otherwise exclude its water damage. Chabad is wrong. As multiple judges in this district have held, and as the policy's plain language makes clear, the policy's water exclusion bars coverage. The damage is covered only through the "Water or Backup or Overflow of Sewers and Drains" extension of the applicable endorsement as a matter of law. SIC paid this in full based on the proper limit and is therefore entitled to summary final judgment.

Case No. . 1:21-CV-24043-DPG

## II. ARGUMENT AND LEGAL AUTHORITY

A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The court's focus on reviewing a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1364 (S.D. Fla. 2001) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That is, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). 'Summary judgment is properly regarded not as a disfavored procedural shortcut, but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy and inexpensive determination of every action." *Gaston*, 129 F. Supp. 2d at 1364 (citing *Celotex*, 477 U.S. 317 at 327).

B.  POLICY INTERPRETATION

Florida substantive law applies to the present case because the Court is sitting in diversity. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010). Under Florida law, the interpretation of an insurance policy is a question of law for the Court. *Technical Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th

Case No. . 1:21-CV-24043-DPG

Cir. 1998); *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013).

However, in construing insurance policies according to their plain meaning, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000. Further, given their tendency to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses. *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. 5th DCA 2011) (citation omitted). Yet "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)

If policy language is susceptible to more than one reasonable interpretation, however, the policy is considered ambiguous and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Auto-Owners*, 756 So. 2d at 34. Nevertheless, the policy "must actually be ambiguous" to permit such a construction. *Taurus Holdings*, 913 So. 2d at 532. Courts may not "put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So. 2d 95, 97 (Fla. Dist. Ct. App. 1991). The mere fact that an insurance

Case No. . 1:21-CV-24043-DPG

provision is "complex" or "requires analysis" does not make it ambiguous. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).

**C.    COVERAGE EXTENSION AFFORDS COVERAGE FOR UP TO $5,000**

The Policy contains a coverage extension which provides:

> **7. Water Backup or Overflow of Sewers and Drains**
>
> a.  We will pay for direct physical loss or damage to Covered Property caused by or resulting from water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, or sump pump.
>
> The most we will pay or this extension is $5,000 at each described premises.
>
> b.  Under Causes of Loss – Special Form, subsection B. Exclusions, paragraph g.(3) (Water that backs up or overflows from a sewer, drain, or sump) is deleted for the purposes of this extension only.

*See* SMF[1] ¶ 7. It is undisputed that Chabad seeks damage caused by water discharging from a sewer or drain, that SIC afforded coverage under this extension, and that SIC paid the full amount of the extension. *See* SMF ¶ 8 and 9. Since this is the only coverage afforded and SIC paid it in full, SIC is entitled to summary final judgment.

**C.    THE WATER EXCLUSION OTHERWISE BARS COVERAGE**

Chabad argues that although the coverage extension affords coverage, it is superfluous and the limit inapplicable because the B.1.g.(3) Water Exclusion does not bar its water damage from a drain or sewer. The Policy's plain language, numerous cases on point, the inclusion of the

---

[1] This refers to SIC's Statement of Undisputed Material Facts filed concurrently herewith.

Case No. . 1:21-CV-24043-DPG

coverage extension, and the extensions' deletion of the B.1.g.(3) Water Exclusion for the purpose of the extension all refute Chabad's argument.

The B.1.g.(3) Water Exclusion bars coverage "for loss or damage caused directly or indirectly by . . . [w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment." *See* SMF ¶ 3. The Policy defines "sewer" as "any underground pipe . . . for carrying water, wastewater or sewage on or away from the premises," and defines "drain" as "any pipe . . . for carrying water, wastewater or sewage on or away from the premises." *See* SMF ¶ 4. It is undisputed that Chabad seeks damage by water discharging from a sewer or drain, so the damage it seeks falls squarely within the B.1.g.(3) Water Exclusion.

Chabad nevertheless attempts to avoid the clear and applicable exclusion through a convoluted argument that follows: the Policy's wear and tear, corrosion, and deterioration exclusions—Section B.2.d.— provides that:

> But if an excluded cause of loss that is listed in 2.d.(1) through (7) [including wear and tear, corrosion, deterioration, cracking, etc.] results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that 'specified cause of loss' or building glass breakage.

*See* SMF ¶ 6. The Policy defines "specified cause of loss" to mean, among other things, "water damage." *See* SMF ¶ 6. The Policy then defines "water damage" under this section as follows:

> (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

Case No. . 1:21-CV-24043-DPG

> (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

See SMF ¶ 6. Chabad argues that this provision contradicts the B.1.g.(3) exclusion and therefore is ambiguous and inapplicable. This argument may have merit if the provision ended there, but it does not. It further provides that:

> But water damage does not include loss or damage otherwise excluded under the terms of the water exclusion…

> To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified cause of loss," such water is not subject to the provisions of the Water Exclusion **which preclude coverage for surface water or water under the surface of the ground.**

See SMF ¶ 6. This exclusion by its plain language renders the B.1.g. exclusions for surface water and underground water inapplicable where damage is caused by "water damage" as defined under the "specified causes of loss." *Id.* The problem with Chabad's argument is that the B.1.g.(3) Water Exclusion ***does not*** exclude surface water or underground water. The B.1.g.(1) Water Exclusion bars surface water and the B.1.g.(4) Water Exclusion bars underground water. See SMF ¶ 2. Thus, this provision has no effect on the B.1.g.(3) Water Exclusion—water damage from a drain or sewer discharge is still excluded even if it falls with the "specified cause of loss" "water damage" definition.

Three Southern Districts have reached the same conclusion in cases on point. *Raffell v. Scottsdale Ins. Co.*, No. 20-Civ-21719, 2021 U.S. Dist. LEXIS 4843 (S.D. Fla. Jan. 8, 2021) (Judge Cecilia Altonaga); *Purdy Lane, Inc. v. Scottsdale Ins. Co.*, No. 20-Civ-80966, 2021 U.S. Dist. LEXIS 27417 (S.D. Fla. Feb. 11, 2021) (Judge Kenneth Marra); *1901 Holding, LLC v. Scottsdale Ins. Co.*, 2021 U.S. Dist. LEXIA 116642 (S.D. Fla. June 22, 2021) (Judge Rodney Smith).

In *Raffell*, the insured made the same argument Chabad does here—that the same B.1.g.(3) Water Exclusion does not bar damage caused by water discharging from deteriorated drains or sewers. *Raffell*, 2021 U.S. Dist. LEXIS 4843, *3 and 4-9. The Court held that the Policy unambiguously excluded the claimed damage. *Id.* at *15. Observing that the paragraph preceding the exception provided that "water damage does not include loss or damage *otherwise excluded under the terms of the Water Exclusion*," the Court found that Chabad's same argument was "disconnected from the plain language of the Policy." *Id.* at *16-17 (emphasis supplied).

The Court explained that this:

> makes clear that "such water is not subject to the *provisions* of the Water Exclusion which *preclude coverage for surface water or water under the surface of the ground*." Stated differently, the Water Exclusion's provisions that preclude coverage for either surface water (subsection (1) of the Water Exclusion) or water under the surface of the ground (subsection (4) of the Water Exclusion) do not apply to "accidental discharge or leakage of water [that] falls within the criteria set forth in . . . this definition of 'specified causes of loss,'". Defendant invokes subsection (3) of the Water Exclusion, not subsections (1) or (4).

*Id.* at *17 (emphasis supplied).

7

Case No. . 1:21-CV-24043-DPG

In *Purdy Lane,* the insured made the same argument *Id.* at *15-16. The Court again held that that reliance on the exception at the end of provision G.2.c is "misplaced" because it applies only to the exclusions for "surface water" (B.1.g.(1)) and the "water under the surface of the ground" exclusion (B.1.g.(4)); not for the B.1.g(3) exclusion for water discharged from a sewer or drain. *Id.* at *16.

In *1901 Holding*, the insured made the same argument yet again. *1901 Holding,* 2021 U.S. Dist. LEXIS 116642. The Court rejected it again, holding that:

> [R]eliance on Paragraph G.2.c(2) is misplaced for two reasons. First, Paragraph G.2.c clearly states that "water damage" under this paragraph "does not include loss or damage otherwise excluded under the terms of the Water Exclusion." [citation omitted]. Second, Paragraph G.2.c also states that "to the extent that accidental discharge or leakage of water falls within the criteria set forth in [Paragraphs G.2.c.(1) or G.2.c.(2)] of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which precludes coverage for **surface water** or **water under the surface of the ground**." [citation omitted]. In other words, Paragraph G.2.c.(2) provides an exception to only those provisions of the Water Exclusion that involve surface water or water under the surface of the ground. Paragraph G.2.c.(2) does not modify or otherwise impact any provisions of the Water Exclusion that involve water or waterborne material that overflows or is otherwise discharged from a "drain."

*Id.* at *11-12.

Not only is the plain language in the Policy the same and Chabad's argument the same as those rejected in *Raffell*, *Purdy Lane,* and *1901 Holding*; the Policy's coverage extension here makes the issue even more clear. The Policy includes the coverage extension, and the extension deletes the B.g.(3) Water Exclusion for the purpose of the extension. If the B.1.g.(3) Water

Case No. . 1:21-CV-24043-DPG

Exclusion did not bar coverage, there would be no reason for the extension or for it to delete the B.1.g.(3) Water Exclusion for the purpose of the extension.

Accordingly, the Court should enter summary final judgment in SIC's favor.

WHEREFORE, SIC requests that the Court enter summary final judgment in its favor and against Chabad, and for any further relief deemed just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Joseph V. Manzo
**Joseph V. Manzo**
Florida Bar No. 52309
jmanzo@hinshawlaw.com
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the February 16, 2022, I electronically filed the foregoing document with the Clerk of the court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are authorized to receive electronically Notices of Electronic Filing.

/s/ Joseph V. Manzo
Joseph V. Manzo

1046370\310093037.v1