UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CHABAD OF KEY BISCAYNE, INC.,                    CASE NO. 1:21-CV-24043-DPG

    Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY FINAL JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, the Plaintiff, CHABAD OF KEY BISCAYNE, INC. ("Chabad"), and files this its Response in Opposition to Defendant SCOTTSDALE INSURANCE COMPANY's ("SIC") Motion for Summary Final Judgment and Incorporated Memorandum of Law.

**A.     INTRODUCTION**

SIC insures the Chabad.  The Chabad suffered damage caused by water discharging from sewer or drain pipe that failed due to wear and tear.  SIC denied coverage asserting subsection (3) of the policy's "Water" exclusion bars coverage for the entire loss.  SIC then paid the Chabad $5,000 under a coverage extension that only applies in circumstances where a loss is excluded under subsection (3) of the "Water" exclusion and not covered by any of the exceptions to the exclusion.

An exception to an exclusion designates circumstances included in the exclusion that retain coverage.  An exception to an exclusion limits the application of the exclusion such that it does not apply to the described circumstances.  See https://www.irmi.com/term/insurance-definitions/exception-to-exclusion.

Neither subsection (3) of the "Water" exclusion nor the $5,000 coverage extension apply in this case because the Chabad's loss is covered up to policy limits because it falls squarely within an exception to subsection (3) of the "Water" exclusion. Specifically, the policy contains a "water damage" exception to subsection (3) of the "Water" exclusion that prevents application of the exclusion in the specific circumstances where water discharges either (1) any part of a plumbing system located on the described premises or (2) a sewer or drain pipe located off the described premises due to wear and tear.

SIC breached the subject policy of insurance when it limited the Chabad's recovery under the policy to a $5,000 coverage extension that only applies to losses excluded by subsection (3) of the "Water" exclusion because the Chabad's loss is covered pursuant to the "water damage" exception to subsection (3) of the "Water" exclusion.

**B.    POLICY INTERPRETATION**

Florida law governs the subject contract interpretation dispute being heard by this Honorable Court under diversity jurisdiction. Mid-Continent Cas. Co. v. American Pride Bldg. Co., LLC, 601 F.3d 1143, 1148 (11th Cir. 2010). Contract interpretation is a question of law. Whitley v. Royal Trails Property Owners' Ass'n, Inc., 910 So.2d 381, 383 (Fla. 5th DCA 2005).

Insurance contracts are to be construed in accordance with the plain language of the policy. "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). Ambiguous policy exclusions are construed against the drafter and in favor of the insured. Id. *citing* Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla. 1998). "In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses."

Id. *citing* State Comprehensive Health Ass'n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997).

SIC issued the Chabad an "all-risk" policy that insures against "direct physical loss unless the loss is excluded or limited in this policy." *See page 1 of form CP 10 30 09 17 of* **Exhibit "A"** *to the Defendant's Motion*.

Under an all-risk policy, "the insured is only required to prove that damage occurred during the policy period." Sec. First Ins. Co. v. Czelusniak, 305 So.3d 717, 718 (Fla. 3 DCA 2020) *citing* Jones v. Federated National Ins. Co., 235 So.3d 936, 941 (Fla. 4 DCA 2018). Then "the burden shifts to the insurer to prove that one of the policy exclusions bars coverage." Id. "If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion." Empire Pro Restoration, Inc. v. Citizens Property Ins. Corp., 322 So.3d 96, 98 (Fla. 4 DCA 2021).

There is no dispute the insured property suffered water damage after water discharged a failed sewer or drain pipe that broke due to wear and tear, deterioration, and settling during the policy period. (ECF No. 10, ¶1). Because the parties agree the insured property suffered damage during the policy period, the Chabad has sustained its initial burden of proof to recover under the subject all-risk policy. As a result, the burden of proof is shifted to SIC to prove a policy exclusion bars coverage.

SIC alleges the Chabad's entire loss is excluded by subsection (3) of the policy's "Water" exclusion, which precludes coverage for loss caused by "Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment."

The Chabad does not dispute that water discharged from an underground pipe that meets the definition of a "sewer" or "drain" under the policy and caused water damage.

3

It is the Chabad's position that its loss falls squarely within the "water damage" exception to the "Water" exclusion relied upon by SIC.

C. **THE POLICY'S "SEWER OR DRAIN ENDORSEMENT – FLORIDA" DOES NOT CHANGE THE ANALYSIS APPLIED IN <u>CHEETHAM</u> AND <u>CAMERON</u> BECAUSE THE TERMS "SEWER" AND "DRAIN" HAVE ALWAYS BEEN DEFINED TO INCLUDE SEWER AND DRAIN PIPES LOCATED BOTH ON AND OFF THE DESCRIBED PREMISES**

The policy interpretation issue in this case is controlled by the decisions in <u>Cheetham v. Southern Oak Ins. Co.</u>, 114 So.3d 257 (Fla. 3 DCA 2013) and <u>Cameron v. Scottsdale Ins. Co.</u>, 726 Fed.Appx. 757 (11th Cir. 2018). The policies in these cases contained the same "Water" exclusion as the one found in our policy pertaining to backups or discharges from "sewers" or "drains". They also had a "water damage" exception pertaining to damage caused by water that discharges the "plumbing system" located on the "described premises". <u>Cheetham</u> and <u>Cameron</u> both held that the "Water" exclusion excluded coverage for backups or discharges from sewers or drains but that the "water damage" exception is an exception to the "Water" exclusion for backups and discharges from sewers or drains that are located on the described premises and are thus part of the "plumbing system" on the "described premises." There is no difference between our policy and the policy in <u>Cheetham</u> and <u>Cameron</u> that would justify departing from <u>Cameron</u>, which is binding.

Florida case law has always defined "sewers" and "drains" to include both sewer and drain pipes that exist within the "plumbing system" located on the "described premises" and sewer and drain pipes connected to the plumbing system but belonging to and located on property owned by a municipality. <u>Cameron</u>, 726 Fed.Appx. at 760-2 ("We therefore must decide whether the Water Exclusion applies to exclude coverage for the claimed loss because the pipe collapse caused water to backup ***through a drain in the plumbing system*** and into the premises [emphasis added]. . . . we conclude that Paragraph 3 of the Water Exclusion, like paragraph b. of the water-damage

4

exclusion in Cheetham, 'pertains to damage caused by water not originating from the residence premises' plumbing system even though the water or water-borne material eventually backs up through a pipe and/or ***drain within the plumbing system of the residence premises***. [emphasis added]") *citing* Cheetham, 114 So.3d at 262-63, see also Purdy Lane, Inc. v. Scottsdale Ins. Co., 2021 WL 1053283, 20-80966-CIV-MARRA (Feb. 11, 2021)("***The sewer line that collapsed is a utility service supplied to the building***. . . . ***The sewer line is also a plumbing system that is located on the insured premises***, which contains water. [emphasis added]"); Old Dominion Ins. Co. v. Elysee, Inc., 601 So.2d 1243, 1245 (Fla. 1 DCA 1992)(defining "sewer" as "a pipe or drain usually underground, used to carry off water and waste matter" and "drain" as a "channel or pipe for carrying off water, sewage, etc." without regard to location or ownership).  The definition of "sewer" and "drain" supplied by our policy's "SEWER OR DRAIN DEFINITION ENDORSEMENT – FLORIDA" endorsement is no different from the case law definition of these terms.  The Raffell order relied upon by SIC, and its progeny, are simply wrong to the extent they make the conclusory and legally and logically unsupported allegation that the addition of the language "on or away from the premises" to the definitions of "sewer" and "drain" "serves to expand [the Water Exclusion's] scope."  The "Water" exclusion has always been interpreted as excluding coverage for backups and discharges originating anywhere (both on and off the described premises), and the "water damage" exception has always been interpreted as an exception to the "Water" exclusion for backups and discharges originating within the "plumbing system" on the described premises.  As discussed above, Florida law has always defined the term "plumbing system" to include sewer and drain pipes located on the insured premises but not sewer and drain pipes that are located off the described premises and belong to a municipality.

5

Cheetham and Cameron did not reconcile the "Water" exclusion and "water damage" exception by defining the terms "sewer" and "drain" to exclude pipes or drains located within the "plumbing system" on the "described premises". Cheetham and Cameron simply found that the "water damage" exception for "[a]ccidental discharge or leakage of water" from a "plumbing system" located on the described premises was an exception to the "Water" exclusion for backups or discharges from "sewers" or "drains" to the extent the "sewer" or "drain" pipe was located on the described premises and was also part of the "plumbing system" on the described premises. The endorsement in our policy defining the terms "sewer" and "drain" as pipes ". . . for carrying water . . . on or away from the premises . . ." does not change the analysis applied by Cheetham and Cameron. As a matter of fact, our policy contains a more expansive "water damage" exception than the exception in Cameron and Cheetham because our exception contains additional language that provides coverage for backups and discharges originating from a "sewer" pipe located outside of described premises' plumbing system too.

**D.  OUR POLICY CONTAINS A "WATER DAMAGE" EXCEPTION TO THE "WATER" EXCLUSION THAT PROVIDES COVERAGE FOR DAMAGE CAUSED BY WATER THAT DISCHARGES FROM SEWERS OR DRAINS IN CERTAIN CIRCUMSTANCES WHERE THE EXCLUSION WOULD APPLY BUT FOR THE EXCEPTION**

An "Exception (to Exclusion)" means "circumstances included in an exclusion that retain coverage. Exceptions limit the application of the exclusion such that it does not apply to the described circumstances." See https://www.irmi.com/term/insurance-definitions/exception-to-exclusion. By definition, an exception controls over the exclusion to which the exception applies.

The subject policy states:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
>                              . . .

**d. (1) Wear and tear** [emphasis added];

**(2)** Rust or other corrosion, decay, **deterioration** [emphasis added], hidden or latent defect or any quality in property that causes it to damage or destroy itself;

. . .

**(4) Settling** [emphasis added], cracking, shrinking or expansion;

. . .

**But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage** [emphasis added].

. . .

**F. Additional Coverage Extensions**

. . .

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**
If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**G. Definitions**

. . .

**2. "Specified causes of loss" means** the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; **water damage** [emphasis added].

. . .

**c. Water damage means:**

**(1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts),**

7

> **that is located on the described premises and contains water or steam; and**
>
> **(2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located** [emphasis added].
>
> But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking.  As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.
>
> To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.
>
> . . .

Florida case law has interpreted policy language similar to the above-cited language as creating a "water damage" exception to subsection (3) of the "Water" exclusion in our policy. *See* Cameron, 726 Fed.Appx. 757; *see also* Cheetham, 114 So.3d 257.  The exception provides coverage for damage caused by water that discharges from sewers or drains in certain circumstances where subsection (3) of the exclusion would apply but for the exception.

Like SIC in this case, both insurance carriers in Cameron and Cheetham argued that the language in the "water damage" exception stating "water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion" should be interpreted as meaning the

"Water" exclusion controls in circumstances where the "Water" exclusion and "water damage" exception both seem to apply. Both the Cameron and Cheetham courts rejected this proposed interpretation finding such an interpretation would invalidate the coverage provided by the "water damage" exception. Instead, the Cameron and Cheetham courts read the policy a whole and interpreted the "Water" exclusion as only applying to water backups originating from sewers and drains that are located off the described premises. Sewers and drains located off the described premises are not part of the "plumbing system" on the "described premises" to which the "water damage" exception applies. Sewers and drains located on the described premises are part of the "plumbing system" on the "described premises" to which the "water damage" exception applies.

E. **ALL POLICY LANGUAGE CAN BE RECONCILED BY TREATING THE EXCLUSION LIKE AN EXCLUSION AND THE EXCEPTION LIKE AN EXCEPTION AS INTENDED**

Endorsements can contradict and change the language found in the main policy; whereas separate provisions found in the same policy form should not invalidate each other but should be reconciled in a manner that gives each provision its full meaning and operative effect. *See* Nabbie v. Orlando Outlet Owner, LLC, 237 So.3d 463, 466 (Fla. 5 DCA 2018). Although it is possible to have an insurance policy where one provision in the policy completely replaces or invalidates another provision, this only happens when a policy endorsement changes the terms and conditions found in the main policy form. We know the "Water" exclusion and the "water damage" exception in our policy were intended to co-exist side-by-side without invalidating each other because they are both found in the same policy form, form number "CP 10 30 09 17".

SIC argues that the inclusion of the "SEWER OR DRAIN DEFINITION ENDORSEMENT – FLORIDA" found in the subject policy expands the scope of subsection (3) of the "Water" exclusion to preclude coverage for backups originating ***on*** the described premises.

9

As discussed above, it is the Chabad's position that subsection (3) of the "Water" exclusion has always excluded coverage for backups originating on and off the described premises. Now that we have agreed the "Water" exclusion applies, we need to examine the "water damage" exception to determine whether it applies.

The "water damage" exception in the subject policy is different from many other policies that only contain exceptions covering backups originating from within the plumbing system located on the described premises. The "water damage" exception in our policy is written in a manner that anticipates subjection (3) of the exclusion will apply to backups originating both on and off the described premises. Our exception contains two subsections separately addressing the circumstances under which a sewer or drain backup originating **_on_** the described premises is covered and the circumstances under which a sewer or drain backup originating **_off_** the described premises is covered. The exception provides broader coverage for backups originating on the described premises than its does for backups originating off premises. The exception provides coverage when water discharges any part of the "plumbing system" located on described premises that breaks due to any of the causes listed in 2.d.(1) through (7) on page 3 of 10 of form CP 10 30 09 17 while only providing coverage for discharges originating off the described premises when a "water or sewer pipe" breaks due to "wear and tear" but nothing else.

The "water damage" exception clearly applies in this case. The exception provides coverage for water that discharges from any part of a plumbing system located on the described premises or a sewer pipe located off the described premises due to wear and tear.

### F. "BUT WATER DAMAGE DOES NOT INCLUDE LOSS OR DAMAGE OTHERWISE EXCLUDED UNDER THE TERMS OF THE WATER EXCLUSION" REFERS TO LOSS EXCLUDED BY THE "WATER" EXCLUSION BUT NOT COVERED BY THE "WATER DAMAGE" EXCEPTION

Subsection (2) of the "water damage" exception provides coverage for ". . . discharge . . . of water . . . [from a ] sewer pipe . . ." Subsection (3) of the "Water" exclusion, on the other hand, excludes coverage for water damage caused by "Water that . . . is . . . discharged from a sewer . . ." There is simply no circumstance to which subsection (2) of the exception applies that is not clearly and completely excluded under subsection (3) of the "Water" exclusion. SIC's interpretation of the policy completely invalidates subsection (2) of the "water damage" exception, defeating the purpose of having subsection (2) of the exception in the first place and making the coverage described therein illusory and a trick on the insured making him/her/them believe he/she/they has/have coverage that does not exist. If SIC wanted to exclude coverage for damage caused by water that discharges a sewer or drain under all circumstances, it needed to say so. SIC cannot included policy language that states water damage caused by a discharge from a sewer pipe is covered when the pipe breaks due to wear and tear and then argue an exclusion in the same policy form invalidates this coverage.

SIC urges the Court to interpret the sentence "But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion" to mean subsection (3) of the "Water" exclusion controls in circumstances where both the exclusion and the exception apply. This interpretation violates the very nature of having an exception to an exclusion in the first place, which is to define limited "circumstances included in an exclusion that retain coverage." This Honorable Court should not interpret the policy in a manner where subsection (3) of the "Water" exclusion invalidates all coverage afforded by subsection (2) of the "water damage" exception.

The phrase ". . . loss or damage otherwise excluded under the terms of the Water Exclusion" refers to loss or damage otherwise excluded ***but not excepted***. The word "otherwise" is defined as "in circumstances different from those present or considered; or else." See https://www.google.com/search?q=otherwise+definition. The circumstances considered by the "water damage" exception, particularly subsection (2), are circumstances where subsection (3) of the "Water" exclusion also apply. This was recognized in both <u>Cameron</u> and <u>Cheetham</u>. Once the <u>Cameron</u> and <u>Cheetham</u> courts determined the "water damage" exception was an exception to subsection (3) of the "Water" exclusion, both courts endeavored to interpret the exclusion and exception at issue in a manner where one did not invalidate the other. The use of the word "otherwise" means "in circumstances different from those [described in the exception]." The example illustrations contained in the "water damage" exception help make this clear.

The "water damage" exception contains "example" illustrations that immediately follow and help explain the meaning of the sentence "But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion." The examples clearly show that the cause of the break in the pipe is what determines whether the loss is "otherwise excluded under the terms of the Water Exclusion." The examples show the "Water" exclusion only controls when the cause of the break in the pipe is excluded by the "Water" exclusion even if a cause described in the "water damage" exception also contributed to the pipe break. Specifically, one of the examples states there is no coverage under the exception when a pipe breaks due to weather-induced flooding, which is excluded in subsection (1) of the "Water" exclusion, even if wear and tear, a cause listed in the exception to the exclusion, also contributed to the pipe break. Once again, the illustration makes clear that the cause of the break in the pipe is what determines coverage. If the cause of the pipe break is excluded by the "Water" exclusion, such as a pipe break

12

caused by weather-induced flooding, the loss is excluded even if an excepted cause also contributed to breaking the pipe. If the cause of the pipe break is a cause of loss specifically described in the exception to the exclusion as covered and not otherwise excluded by the "Water" exclusion, such as wear and tear, the loss is covered.

**G.  NONE OF THE THREE SOUTHERN DISTRICT TRIAL COURT ORDERS ARGUED BY SIC ADDRESS THE ISSUE IN THIS CASE**

SIC argues that three trial court orders from the United States District Court for the Southern District of Florida address the issue in this case and grant summary judgment in SIC's favor. *See* Raffell v. Scottsdale Ins. Co., No. 20-Civ-21719, 2021 U.S. Dist. LEXIS 4843 (S.D. Fla. Jan. 8, 2021) (Judge Cecilia Altonaga); Purdy Lane, Inc. v. Scottsdale Ins. Co., No. 20-Civ-80966, 2021 U.S. Dist. LEXIS 27417 (S.D. Fla. Feb. 11, 2021) (Judge Kenneth Marra); 1901 Holding, LLC v. Scottsdale Ins. Co., 2021 U.S. Dist. LEXIA 116642 (S.D. Fla. June 22, 2021) (Judge Rodney Smith). In reality, none of the three trial court orders relied upon by SIC have merit.

The Raffell order was issued before the orders in Purdy Lane and 1901 Holding, and the two latter orders cite to and rely upon the Raffell order. For the reasons that the Raffell order is wrong, so are the Purdy Lane and 1901 Holding orders.

The issue in this case is whether subsection (3) of the "Water" exclusion or the "water damage" exception controls in circumstances where both apply. This exact issue was addressed in Cheetham and Cameron, both of which reject SIC's argument that the "Water" exclusion should be interpreted as invalidating the coverage afforded in the "water damage" exception. Both Cheetham and Cameron hold that an insurance "policy must be construed as a whole to give every provision its full meaning and operative effect." Cameron, 726 Fed.Appx. at 759 and Cheetham, 114 So.3d at 262.

The <u>Raffell</u> order specifically refuses to follow Florida law governing policy interpretation. The <u>Raffell</u> order states "Plaintiffs then request the Court 'harmoniz[e] the coverage provisions' because the "'water damage' provision" describes the term 'sewer pipe . . . to be located off the [] premises.' . . . The Court will not (and cannot) do what Plaintiffs request . . ."

The "Plaintiffs['] request the Court 'harmoniz[e] the coverage provisions'" was a request that the <u>Raffell</u> court interpret the policy in accordance with Florida law. The <u>Raffell</u> court specifically states in its order that "The Court will not . . . do what Plaintiffs request". As an afterthought, the <u>Raffell</u> court attempted to justify its refusal to follow Florida law alleging it "cannot" "rewrite the contract and give an expressly defined term a more restrictive meaning." No one asked the <u>Raffell</u> court to "rewrite the contract," and <u>Raffell</u> court does not explain what it means when it alleges that the plaintiffs requested the court to "rewrite the contract and give an expressly defined term a more restrictive meaning." The <u>Raffell</u> court reframed the plaintiffs' lawful request that the <u>Raffell</u> court follow Florida law governing policy interpretation as an unlawful request to "rewrite the contract and give an expressly defined term a more restrictive meaning" in an effort to justify the court's refusal to follow Florida law. The plaintiffs in <u>Raffell</u> asked the court to follow Florida law governing contract interpretation and to reconcile or harmonize conflicting contract provisions in a manner that gives each its full meaning and operative effect, nothing more.

The "water damage" exception in our policy contains two subsections separately defining the circumstances under which a discharge originating on the described premises is covered and when a discharge originating off the described premises is covered. Although the <u>Raffell</u> court concluded the policy endorsement defining "sewer" and "drain" expanded the scope of the "Water" exclusion by expanding the definition of "sewer" and "drain" to include pipes located on

14

the describe premises, the Raffell court did not explain how it concluded that the defining of these terms to include pipes located on the described premises limits the application of or invalidates the "water damage" exception, which clearly applies in this case.

As mentioned above, the Chabad does not dispute its loss is excluded by subsection (3) of the "Water" exclusion.  It is the Chabad's position that its loss falls squarely within the "water damage" exception.  Because an exception only applies to "circumstances ***included in an exclusion*** that retain coverage [emphasis added]," expanding the scope of circumstances included in an exclusion can only expand or have no effect on the scope of circumstances to which a corresponding exception also applies.  The Raffell court's holding that expanding the scope of an exclusion somehow reduces the scope of an exception that only applies in circumstances included in the exclusion is illogical.

Another reason the Raffell order cannot be relied upon in our case because the Raffell court refused to address the effect of defining "sewer" and "drain" on the "water damage" exception alleging the plaintiffs' attorney failed to thoroughly address and preserve the issue.  Specifically, the Raffell court wrote "Plaintiffs contend – without citing any legal authority – the same analysis applies despite the Policy's definitions of 'sewer' and 'drain.' . . . Rather than address the Policy's definitions of 'sewer' and 'drain,' Plaintiffs propose the Court omit reference to the definitions altogether."  Clearly the Raffell court did not address the effect of defining "sewer" and "drain" on the "water damage" exception, and the plaintiffs in Raffell could not have appealed this issue without preserving it in the trial court.

SIC argues that Raffell, Purdy Lane, and 1901 Holding orders all hold that the "water damage" exception is only an exception to subsections (1) and (4) of the "Water" exclusion pertaining to "surface water" and "water under the ground".  SIC's argument and the Purdy Lane

and 1901 Holding orders are all based on the Raffell court's mistaken conclusion that the "water damage" exception is only an exception to subsections (1) and (4) but not subsection (3) of the "Water" exclusion.  The Raffell court, and then the Purdy Lane and 1901 Holding courts, ignored all prior precedent finding the "water damage" exception is an exception to subjection (3) of the "Water" exclusion and misinterpreted the policy.

Every appellate court that has examined a "water damage" exception like the one in our policy has correctly held that it is an exception to subsection (3) of the "Water" exclusion pertaining to discharge of water from sewers or drains.  *See* Cameron, 726 Fed.Appx. 757; Cheetham, 114 So.3d 257; Glaser v. GeoVera Specialty Ins. Co., 420 F.Supp.3d 1287 (M.D. Florida 2019)(interpreting water damage exception stating "Section I – Exclusion A.3. Water, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under c.(5) and c.(6) above" as an exception to paragraph b. of Water exclusion applicable to water that backs up through sewers or drains); Hartford Acc. & Indem. Co. v. Phelps, 294 So.2d 362, 363 (Fla. 1 DCA 1974)("When we consider the terminology used in the exclusion clause in pari materia with the affirmative statement of coverage from leaks in the plumbing system, we conclude that the exclusion was intended to relate only to damage from water not emanating from the plumbing system.").  This is made obvious merely by looking at and comparing the language of subsection (3) of the exclusion with the language of the exception. Subsection (3) of the "Water" exclusion precludes coverage for "Water that . . . is . . . discharged from a sewer . . . ."  The "water damage" exception, on the other hand, limits the application of the "Water" exclusion in circumstances where there is an "[a]ccidental discharge . . . of water . . . as the direct result of the breaking apart or cracking of a . . . sewer pipe caused by

wear and tear . . ." The "water damage" exception is clearly, without a doubt, an exception to subsection (3) of the "Water" exclusion.

The "water damage" exception in our policy is an exception to subsection (3) of the "Water" exclusion pertaining water that backs up or is otherwise discharged from a sewer or drain pipe. Florida law distinguishes between water that discharges a sewer or drain, surface water, and water below the surface of the ground as three separate and distinct causes of loss. *See* Kokhan v. Auto Club Ins. Co. of Florida, 297 So.3d 570 (Fla. 4 DCA 2020)(holding that water under the surface of the ground originating from a plumbing system is not the type of "naturally-existing ground water" excluded by the "Water" exclusion for "water below the surface of the ground"); Libby, McNeil & Libby v. Roberts, 110 So.2d 82, 83-4 (Fla. 2 DCA 1959)(defining "surface water" as "that which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state of condition.") *see also* McCorkle v. Penn Mut. Fire Ins. Co., 213 So.2d 272, 273 (Fla. 3 DCA 1968). The sentence in the "water damage" exception stating water that escapes a plumbing system or sewer is not excluded by subsections (1) and (4) of the "Water" exclusion applicable to surface water and water under the ground is nothing more than a correct statement of Florida law, which holds that water that discharges a sewer or drain pipe is not excluded "ground water" or "water below the surface of the ground". *See* Id.

The parties dispute the meaning of the sentence in our "water damage" exception stating "To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of 'specified causes of loss,' such water is not subject to the provisions of the Water Exclusion which precludes coverage for surface water or water under the surface of the ground." SIC argues Raffell, Purdy Lane, and 1901 Holding support its interpret

that this sentence means the exception only applies to loss caused by surface water or water under the surface of the ground but not water that discharges a sewer or drain.  Appellate courts have rejected SIC's interpretation repeatedly.  *See* Cameron, 726 Fed.Appx. 760 (finding coverage after framing the issue stating "So the Camerons' loss falls within the definition of 'water damage' unless it is 'otherwise excluded under the terms of the Water Exclusion.'  We therefore must decide whether the Water Exclusion applies to exclude coverage for the claimed loss because the pipe collapse caused water to backup through a drain in the plumbing system and into the premises."); *and* Cheetham, 114 So.3d at 263 (holding that water that discharged a pipe was not otherwise excluded by subsections of water exclusion pertaining to surface water or water below the surface of the ground) .  In reality, this sentence expands the scope of circumstances where the "water damage" exception applies by further limiting application of the "Water" exclusion.  There is simply no explanation how the Raffell, Purdy Lane, or 1901 Holding courts could interpret a sentence intended to expand the scope of an exception to an exclusion as limiting the application of the exception when Florida law requires "exclusionary clauses [be] construed even more strictly against the insurer than coverage clauses." Cheetham, 114 So.3d at 261, *citing* Fayad v. Clarendon National Ins. Co., 899 So.2d 1082, 1086 (Fla. 2005).

## CONCLUSION

The Chabad's loss falls squarely within the policy's "water damage" provision, which has repeatedly and consistently been interpreted by Florida and Federal appellate courts as an exception to subsection (3) of the "Water" exclusion applicable to discharge of water from sewers or drains.  SIC and the trial court orders entered in Raffell, Purdy Lane, and 1901 Holding interpret our policy in a manner that invalidates the coverage afforded by the "water damage" exception in violation of Florida law governing policy interpretation and binding precedent interpreting policies

similar to ours. No appellate court has ever agreed with SIC's policy interpretation in this case, and neither should this Honorable Court.

WHEREFORE, the Plaintiff, CHABAD OF KEY BISCAYNE, INC., respectfully requests this Honorable Court to deny Defendant's summary judgment motion and to enter summary judgment on the issue of liability/coverage in favor of the Chabad.

Dated: March 1, 2022.

Respectfully submitted,

*/s/ Erik D. Diener*_____
Erik D. Diener
FBN 13410
The Diener Firm, P.A.
8751 W. Broward Boulevard,
Suite 404
Plantation, FL 33324
Telephone: (954) 541-2117
Facsimile: (954) 541-2195
Service: service@dienerfirm.com
Erik@dienerfirm.com
Denise@dienerfirm.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via E-Filing Portal on March 1, 2022, upon Defendant to Joseph V. Manzo, Esq., Hinshaw & Culbertson, LLP, 252 Ponce de Leon Blvd, 4th Floor, Coral Gables, FL 33134 at jmanzo@hinshawlaw.com; eriesgo@hinshawlaw.com; and gbejel@hinshawlaw.com.

*/s/ Erik D. Diener*_____
Erik D. Diener